O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VALERIE LEDESMA, | ) | NO. CV 10-01712-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on March 12, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and social security income ("SSI"). On April 12, 2010, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on November 29, 2010, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties'

Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability, DIB, and SSI. (Administrative Record ("A.R.") 115-16.) Plaintiff claims to have been disabled since March 26, 2008, due to manic depression and chronic lumbar spine damage. (A.R. 77, 127, 131.) Plaintiff has past relevant work experience as a housekeeping cleaner and material handler.[1] (A.R. 18.)

After the Commissioner denied plaintiff's claim initially (A.R. 77-81), plaintiff requested a hearing (A.R. 84-85). On July 9, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Robert S. Eisman (the "ALJ"). (A.R. 26-72.) Vocational expert Freeman Leeth also testified. (A.R. 58-69.) On August 7, 2009, the ALJ denied plaintiff's claim (A.R. 13-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since March 26, 2008, the alleged onset date of plaintiff's

---

[1]    Although not discussed in the ALJ's decision, it appears that plaintiff also has past relevant work experience as an "eye lens inspector." (A.R. 132.)

claimed disability.  (A.R. 15.)  The ALJ determined that plaintiff has the following severe impairments:  lower back pain, neck and left upper extremity pain, major depressive disorder with psychotic features, polysubstance dependence in partial remission, and obesity.  (*Id.*)  The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or equals in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926).  (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") for:

> medium work . . . , in that [plaintiff] can exert 20 to 50 pounds of force occasionally and/or 10 to 20 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects. . . . [Plaintiff] cannot climb ladders, ropes or scaffolds, but can frequently climb ramps or stairs.  She can frequently balance, stoop, kneel, crouch, and crawl . . . and can frequently reach and lift with her left upper extremity.  She must avoid concentrated exposure to environmental irritants and poorly ventilated areas.  [Plaintiff] must avoid all concentrated exposure to hazardous machinery, unprotected heights, or other high risk, hazardous, or unsafe conditions. [Plaintiff] can perform work that is limited to simple, routine, and repetitive tasks.

(A.R. 15-16.)

3

The ALJ concluded that plaintiff's past relevant work as a housekeeping cleaner did not require the performance of work-related activities precluded by plaintiff's RFC. (A.R. 18.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act through the date of his decision. (A.R. 19.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

4

1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ failed to assess her excess pain testimony properly. (Joint Stipulation ("Joint Stip.") at 1-25.) Although framed solely as an excess pain claim, it appears that plaintiff's actual claim is that the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony regarding both her physical complaints, including her complaints of excess pain and functional restrictions, and her mental health complaints.

///

///

///

///

5

I.   **The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.**

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 16.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

A.  <u>Plaintiff's Physical Complaints</u>

Plaintiff claims that the ALJ improperly rejected her testimony regarding her excess pain and functional restrictions.

At the hearing, plaintiff testified that her back injury is the most serious problem precluding her from working.  (A.R. 41.)  Plaintiff testified that, as a result of her back injury, she cannot stand or sit for extended periods of time.  (*Id.*)  Plaintiff also testified that her back pain triggers tingling pain in her injured left leg and that, if she sits for too long, that leg becomes numb.[2]  (A.R. 50.)  Plaintiff further testified that she has pain in her left shoulder and neck. (A.R. 44-45.)  She testified that it hurts when she moves and she is in "excruciating pain all the time."  (A.R. 45.)

In his decision, the ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."  (A.R. 16.)  Specifically, with respect to plaintiff's physical complaints,[3] the ALJ found plaintiff to be not credible, because the "objective medical evidence does not corroborate [plaintiff's] extreme allegations of pain and functional restrictions." (*Id.*)

---

[2]   In her Disability Report, plaintiff stated that she can sit for 30 minutes and stand for one hour without experiencing pain.  (A.R. 131.)

[3]   In his decision, the ALJ refers to plaintiff's physical complaints as her "musculoskeletal complaints."  (A.R. 16.)

The ALJ's reason for finding plaintiff to be not credible is neither clear nor convincing.  The failure of the medical record to corroborate plaintiff's subjective symptom testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, the ALJ's finding that the objective evidence does not support the extent of plaintiff's physical complaints cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. See Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotten v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Burch, 400 F.3d at 681.

Even assuming arguendo that the ALJ's reason could form the sole basis for discrediting plaintiff's testimony, it appears that, in finding the severity of plaintiff's physical complaints to be not supported by the objective evidence, the ALJ:  (1) relied on an opinion that was based upon an incomplete review of the available medical records; and (2) failed to accurately summarize the content and tone of plaintiff's medical records.  See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)(reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); see also Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion).

8

In finding that the objective evidence did not support the extent of plaintiff's complaints of excess pain and functional restrictions, the ALJ relied, in part, on the opinion of consultative examiner Mark Borigini, M.D.   In pertinent part, after reviewing a "Comprehensive Chiropractic Report from Willow Medical Group, Incorporated, which discusse[d] x-rays done in the office," and examining plaintiff, Dr. Borigini determined that plaintiff has no functional limitations with respect to lifting or carrying, "is able to bend and crouch," "is able to perform fine and gross manipulations with her hands," and "is able to stand, walk or sit [for] 6 hours in an 8-hour day with appropriate breaks." (A.R. 282-85.)   As plaintiff properly notes, however, there is no indication that Dr. Borigini reviewed plaintiff's MRIs, which included significant findings not found in plaintiff's x-rays, before reaching his conclusions regarding plaintiff's functional limitations and capabilities.   Accordingly, it is unclear whether Dr. Borigingi based his assessment on a sufficiently complete picture of plaintiff's condition, giving due consideration to all relevant medical evidence of record.   *See* 20 C.F.R. §§ 404.1517, 416.917 (noting that "[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition").   As a result, even assuming that the ALJ's reason could form the sole basis for discrediting plaintiff, it is unclear whether Dr. Borigini's opinion constitutes substantial evidence.

In addition, it appears that the ALJ inaccurately characterized other medical records in finding plaintiff's physical complaints to be not supported by the record.   For example, in discrediting plaintiff's complaints of lumbar pain and numbness in the tailbone region, the ALJ

stated that an "examination of [plaintiff's] cervical spine [by chiropractor, Lawrence Domaracki, D.C.,] revealed normal range of motion with pain only at the end range of right lateral bending." (A.R. 17.) The ALJ further noted that an "[e]xamination of plaintiff's thoracolumbar spine revealed pain on forward flexion and supine straight leg raise to 40 degrees with pain." (*Id.*) The ALJ failed to note that the pain associated with plaintiff's thoracolumbar spine was reported as "significant," and critically, the ALJ made no reference to Dr. Domaracki's other findings, including: (1) "[tender] spinous processes of L4, L5, and S1 . . . with loss of intersegmental joint range of motion"; (2) "marked muscular hypertonicity of the bilateral lumbar spine paraspinal musculature"; (3) "significantly painful" right sacroiliac joint and sciatic notch; (4) hypertonicity of the quadratus lumborum; (5) "Kemp's test repoduc[ing] significant lumbar spine pain on the right"; and (6) "FABERE's test in the sitting position reproduc[ing] pain in the right lower back and sacroiliac joint region." (A.R. 209.)

Further, the ALJ misstated Dr. Domaracki's findings regarding an MRI of plaintiff's lumbar spine. In his decision, the ALJ stated that the MRI "showed only 'mild' disc bulge at L3-4 and 'mild' protrusions at L4-5 with associated 'mild' hypertrophy and narrowing of the L4-5 foramen." (A.R. 17.) Significantly, the ALJ failed to address Dr. Domaracki's other relevant findings, including: (1) "*moderate* narrowing of the right L4-5 lateral recess with possible impingement on the right exiting L5 nerve root, secondary to protruded disc and hypertrophy of the posterior element"; (2) "*mild* hypertrophy of the posterior elements [at L3-4] resulting in slight narrowing of bilateral L3-4 neural foramina"; and *mild* hypertrophy of the posterior elements at the L5-S1

10

1  location.[4]  (A.R. 234-35; emphasis added.)

2

3      Similarly, in an attempt to discredit plaintiff's complaints of
4  left shoulder pain, the ALJ stated that Dr. Domaracki's report noted
5  that plaintiff "had *only* some 'mild' tenderness in the subacromial
6  region . . . on range of motion." (A.R. 17; emphasis added.) Contrary
7  to the ALJ's statement, however, Dr. Domaracki's report noted that
8  plaintiff experienced pain not only in the subacromial region but also:
9  "pain to palpation over the acromioclavicular joint and to a greater
10 extent over the supraspinatus musculature"; pain over the superior
11 aspect of the shoulder upon reproduction of Speed's test, Codman's test,
12 and resisted abduction and external rotation; and pain on "flexion,
13 abduction, and internal and external rotation." (A.R. 208.)  In
14 addition, the ALJ made no reference to Dr. Domaracki's June 26, 2008 MRI
15 of plaintiff's left shoulder, which showed mild impingement with slight
16 supraspinatus rotator cuff tendinosis. (A.R. 231.)

17

18     As demonstrated through the above examples, and contrary to
19 defendant's contention, the ALJ did not fairly summarize the record.
20 Rather, it appears that the ALJ may have reached his conclusion
21 regarding plaintiff's credibility first and then improperly attempted to
22 justify that conclusion by ignoring and mischaracterizing competent
23 evidence in the record and by relying on an opinion that was based upon
24 an incomplete review of the medical records.  This constitutes error.

25

26 ────────────────

27     [4]   Moreover, while the ALJ purportedly gave plaintiff the benefit
   of the doubt and restricted her to "medium work," the ALJ failed to
28 discuss Dr. Domaracki's opinion that plaintiff could perform "light
   office work." (A.R. 212.)

1    Additionally, in the Reply section of the parties' Joint
2  Stipulation, plaintiff also claims that the ALJ erred when evaluating
3  her pain testimony, because he failed to discuss the August 19, 2008
4  pain management evaluation performed by Dr. Lawrence R. Miller, M.D.  In
5  his evaluation of plaintiff, Dr. Miller noted that plaintiff has mild
6  left paracervical tenderness in the cervical spine; mild left
7  subacromial tenderness in the upper extremity; positive impingement sign
8  in the shoulder; moderate right paralumbar tenderness in the lumbar
9  spine; positive facet tenderness over the right lower lumbar facet
10  processes; positive piriformis tenderness; positive sacroiliac
11  tenderness; positive sciatic nerve root tension tests; and hypoesthesia
12  in the right L4-5 dermatone.  (A.R. 242, 244.)  After evaluating
13  plaintiff and reviewing, *inter alia*, the MRI of plaintiff's lumbar
14  spine, Dr. Miller diagnosed plaintiff with:  (1) left shoulder
15  impingement syndrome; and (2) lumbar intervertebral disc disruption with
16  right lumbar radiculopathy.  (A.R. 245.)  Dr. Miller further noted that
17  plaintiff has:  "left shoulder and more significant lumbar spine pain
18  complaints with right radicular features"; "weakness in the right lower
19  extremity and sensory loss of the right L4-5 dermatome"; and "foraminal
20  disease at the right L4-5 level with possible impingement and
21  displacement of the right L5 nerve root."  (A.R. 246.)
22
23    While an ALJ need not discuss every piece of evidence, an ALJ must
24  explain why significant and probative evidence -- such as the opinion of
25  Dr. Miller -- has been rejected.  Here, the ALJ failed to discuss Dr.
26  Miller's opinion let alone to give any reason for rejecting that
27  opinion.  This constitutes error.  Further, as Dr. Miller's opinion is
28  relevant to plaintiff's allegations of pain and, thus, to the

determination of plaintiff's credibility, the Court cannot confidently conclude, as required, that the ALJ's error was inconsequential to the ultimate disability determination.  <u>Stout</u>, 454 F.3d at 1055. Accordingly, the ALJ's error cannot, as defendant suggests, be deemed harmless.

B.  <u>Plaintiff's Mental Health Complaints</u>

Plaintiff claims that the ALJ failed to give clear and convincing reasons for discrediting her testimony regarding her mental health complaints -- *to wit*, her alleged inability to concentrate and get along with other people.

In his decision, the ALJ found plaintiff's testimony to be not credible because:  (1) plaintiff "has been capable of sustaining substantial gainful activity despite a long history of depression"; (2) plaintiff "was able to got [sic] out alone, engage in household chores, cook, pay bills and handle cash" despite claims of being unable to focus or concentrate; and (3) "the medical record supports no additional restrictions beyond a limitation to simple routine and repetitive tasks."  (A.R. 17-18)

The ALJ's first ground for finding plaintiff to be not credible is unavailing.  While it is true that plaintiff has suffered from depression since childhood, plaintiff testified at the hearing that her depression has intensified since the date she was injured at work -- the alleged onset date of her disability.  Specifically, plaintiff testified that, as a result of her increased depression, she has no motivation, no

desire to "talk" to anybody, and difficulties concentrating and focusing. (A.R. 57.) Plaintiff attributes her intensified depression to the physical pain she experiences as a result of her allegedly disabling work injury. (A.R. 57.) In view of plaintiff's diagnosis of recurrent depression and plaintiff's testimony that her depression has intensified since her injury, plaintiff's prior ability to purportedly sustain gainful activity -- while presumably suffering from less intense depression -- does not constitute a clear or convincing reason, as required, for finding plaintiff's testimony to be not credible.

The ALJ's second ground for finding plaintiff to be not credible is equally unavailing. The ALJ found plaintiff's statements regarding her alleged inability to concentrate and focus to be not credible, because plaintiff "told the consultative examiner that she was able to go out alone, engage in household chores, cook, pay bills and handle cash." (A.R. 18.) Accordingly, the ALJ determined that plaintiff's self-reported daily activities supported his finding that plaintiff can perform simple, routine, and repetitive tasks. (A.R. 18.)

At the hearing, however, plaintiff explained many of her self-reported daily activities. Plaintiff testified that she has difficulty sleeping at night due to pain and is groggy throughout the day. She further testified that she tries to do a little bit of housework, including, *inter alia*, washing dishes and helping take care of a puppy, but her children must do the majority of the housework, because she is not capable of "be[ing] up [for] too long." (A.R. 52.) Plaintiff also testified that she stays at home most of the time unless she has a

doctor's appointment or an "outing" with Pacific Clinics.[5]

Contrary to the ALJ's finding, plaintiff's self-reported activities do not appear to contradict her asserted inability to focus and concentrate. Moreover, and significantly, the ALJ fails to explain how plaintiff's minimal daily activities and household chores translate into the ability to perform *sustained* work. *See* Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989)(noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace"); *see also* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [plaintiff's] credibility as to her overall disability"). Accordingly, the ALJ's second reason for discrediting plaintiff is neither clear nor convincing.

The ALJ's last ground for finding plaintiff to be not credible -- *to wit*, that the medical record does not support a greater restriction beyond simple, routine, and repetitive tasks -- is also unavailing.[6] As

---

[5]     At the hearing, plaintiff testified that her outings with Pacific Clinics included, among other things, attending classes for survivors of domestic violence, attending therapeutic arts and crafts classes, and going out to restaurants. (A.R. 53-54.)

[6]     In reaching his conclusion, the ALJ noted the December 4, 2008 evaluation of consultative psychiatric examiner Ashraf Elmashat, M.D., who found that plaintiff has no significant mental limitations despite his finding that plaintiff had major depressive disorder and polysubstance dependence. (A.R. 18, 288-94.) The ALJ also referred to the January 29, 2009 report of State Agency physician R. Tashjian, M.D., who found that plaintiff's mental impairments are "not severe," notwithstanding a diagnosis that plaintiff has affective and substance addiction disorders. (A.R. 18, 298.) Nevertheless, the ALJ purportedly

1    discussed above, the failure of the medical evidence to corroborate

2    fully the extent of plaintiff's subjective symptom testimony cannot, by

3    itself, form the sole basis for discrediting plaintiff.  Since the ALJ's

4    other two reasons for rejecting plaintiff's testimony are neither clear

5    nor convincing, the ALJ's third reason cannot, by itself, constitute a

6    clear and convincing reason for discrediting plaintiff's testimony.[7]

7

8    **II.  <u>Remand Is Required</u>.**

9

10        The decision whether to remand for further proceedings or order an

11   immediate award of benefits is within the district court's discretion.

12   <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no

13   useful purpose would be served by further administrative proceedings, or

14   where the record has been fully developed, it is appropriate to exercise

15   this discretion to direct an immediate award of benefits.  *Id.* at 1179

16   ("[T]he decision of whether to remand for further proceedings turns upon

17   the likely utility of such proceedings.").  However, where there are

18   outstanding issues that must be resolved before a determination of

19   _____

20   gave plaintiff "the benefit of the doubt based on her treatment history
     for depression and documented usage of psychotropic medications" by
21   limiting plaintiff to simple, routine, and repetitive tasks.  (A.R. 18.)

22       [7]   Moreover, as noted by plaintiff, it appears that plaintiff's
     psychiatric record is not complete.  A close review of the record
23   reveals that requests for medical records were sent to Pacific Clinics,
     plaintiff's primary psychiatric treatment facility, on September 29,
24   2008 (A.R. 317, 328), and October 14, 2008 (A.R. 314, 325).  In response
     to the requests, Pacific Clinics sent a treatment record dated August
25   29, 2008, which was incorporated into the evidentiary record.  (A.R.
     331.)  Significantly, no other request for medical records was sent to
26   Pacific Clinics, despite plaintiff's indication both in her Disability
     Report and at the hearing that her treatment at Pacific Clinics was on-
27   going.  Given plaintiff's diagnosis of recurrent depression and the
     sheer paucity of medical records from Pacific Clinics, the ALJ should
28   further develop the record in order to consider plaintiff's testimony
     and RFC properly.

                                        16

1  disability can be made, and it is not clear from the record that the ALJ

2  would be required to find the claimant disabled if all the evidence were

3  properly evaluated, remand is appropriate.  *Id.* at 1179-81.

4

5  Remand is the appropriate remedy to allow the ALJ the opportunity

6  to remedy the above-mentioned deficiencies and errors.  *See, e.g.,*

7  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for

8  further proceedings is appropriate if enhancement of the record would be

9  useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)

10  (remand appropriate to remedy defects in the record).

11

12  On remand, the ALJ must correct the above-mentioned deficiencies

13  and errors.  After so doing, the ALJ needs to reconsider plaintiff's

14  testimony regarding both her mental health and physical complaints and,

15  if appropriate, give clear and convincing reasons for rejecting it.  In

16  addition, the ALJ may need to reassess plaintiff's RFC, in which case,

17  additional testimony from a vocational expert likely will be needed to

18  determine what work, if any, plaintiff can perform.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

17

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   April 8, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

18